# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-15-01723-001-TUC-RCC (DTF) |
| Plaintiff, | **ORDER** |
| v. | |
| Lonnie Ray Swartz, | |
| Defendant. | |

Currently pending before the Court is Defendant's Motion to Suppress Statements (Doc. 33). The Court has reviewed the same, together with the Government's response opposition in thereto (Doc. 37) and the Defendant's reply (Doc. 43). Oral argument on this motion was held before this Court on August 23, 2016. For the following reasons, Defendant's motion is **GRANTED**.

## FACTS

Lonnie Ray Swartz ("Swartz" or "Defendant") is charged with one count of second degree murder in violation of 18 U.S.C. § 1111(a) & (b) in relation to a shooting that occurred on October 12, 2012. Shortly after the shooting Swartz was approached by his supervisor, Leo Cruz-Mendez ("Mendez").

Mendez made the following statements to Swartz:

- Hey, just – just relax. Take it easy. Everyone's doing okay. I'm going to ask you a couple questions[.] Just purely eight – you know, eight questions I'm going to ask you, and just limit yourself to that.

- Hey, per policy, I have to ask you eight questions. These eight questions are not incriminatory. They're just basic information that I need so I can pass on to my supervisors ... You're not in trouble. You're not – you didn't do anything wrong. Just – I'm going to wait for ta union steward to come to – to – and witness me reading you these – these question.

Doc. 33, Ex. C at 4841[1].

The policy Mendez referenced was incorporated in Chapter Five, Article A(2)(c)-(d) of the U.S. Customs and Border Protection's 2011Use of Force Policy, Guidelines and Procedures Handbook [hereinafter "CBP Use of Force Handbook"], which states:

(c) Any Authorized Officer/Agent who participates in or observes a reportable use of deadly force incident shall orally report the incident to a supervisor in accordance with the requirements of this chapter.

(d) Unless the employee is physically incapacitated or otherwise unable, the oral report shall be made within one (1) hour of the time the incident occurs or within one (1) hour of the time the employee becomes aware of the incident.
The oral report shall be made either in person, or via radio or telephone, and shall be comprised of the following information, if known: …

Doc. 33, Ex. 1 at 3.

Thereafter, as part of subsection (d), 8 questions are listed ("the 8 questions"). *Id.* at 3-4.

After approaching Swartz and making the aforementioned statements, Mendez "pulled [Swartz] to the side in a secure area" where they awaited the arrival of a union steward. Doc. 33, Ex. C at 4842. Later, in the presence of the steward, Mendez proceeded to ask Swartz the 8 questions. *Id.* at 4844. During the questioning, Mendez reiterated that "the questions were not incriminatory" and assured Swartz "they were just going to be basic questions, information that I need to provide to my supervisors." *Id.* at 4845. By and through the instant motion Swartz seeks to suppress the use of the 8

---

[1] All page number references to Doc. 33, Ex C shall refer to the bates stamped page number, and not the grand jury transcript page number.

- 2 -

questions and his answers thereto in this criminal matter.

At the evidentiary hearing on this motion Swartz testified he became aware of the use of force policy and its 8 questions during his training at the border patrol academy and that the policy was reiterated to him by way of a power point presentation during at least one training session he attended after he entered the field.  Swartz also testified he understood the policy to be mandatory, and that failure to comply therewith could result in discipline.  Finally, Swartz testified that, prior to the shooting, he had been issued a card-sized copy of the policy (including the 8 questions) that he carried in the field and had on his person at the time of the shooting.

Swartz's testimony that the use of force policy is mandatory, such that an agent must, upon penalty of discipline, answer the 8 questions posed to him by a supervisor whenever he or she participates in a deadly force incident, was corroborated by two other border patrol agents called to testify at the evidentiary hearing.  One, Peter Hermansen, was personally involved in the development of the use of force policy.  The other, Arturo Del Cueto, is the local union president and a national union vice president.

U.S. Customs and Border Protection, Table of Offenses and Penalties [hereinafter "CBP Table of Offenses and Penalties"], Sec. E(2) states that, a first time "offense" of "willful and intentional refusal to obey a proper order of a superior, a regulation, policy, rule or procedure" exposes an employee to sanctions ranging from a 5-day suspension to removal.  Doc. 33, Ex. 2 at 3.

Finally, and importantly, the CBP Use of Force Handbook contains a cautionary warning.  Under the "Incident Investigation Section" the following passage appears:

> Ensure that supervisory investigative officers involved in the investigation of a deadly force incident are aware that any information provided by any employee under threat of disciplinary action by CBP or through any other means of coercion cannot be used against such employee in any type of action other than administrative actions.

See Doc. 53 at 23-24 (citing Defense Ex. 2 at 23).

## STANDARDS OF LAW

The Fifth Amendment guarantees that a defendant's compelled statements will not be used against him in a subsequent criminal proceeding. U.S. Const., amend. V; see *Garner v. United States*, 424 U.S. 648, 653 (1976). Although the Fifth Amendment privilege is not ordinarily self-executing, *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986), "where a state 'compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment.'" *United States v. Anderson*, 79 F.3d 1522, 1526 (9th Cir. 1996) (citing *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977)). The "classic penalty situation" arises where the state, "either expressly or by implication," asserts that invocation of the privilege would lead to a penalty, such as job forfeiture or revocation of probation. *Minnesota v. Murphy*, 465 U.S. 420, 434-35 (1984). In such circumstances a defendant's failure to assert the privilege is not considered waiver, and neither the compelled statements, nor the fruits thereof, may be admitted over the defendant's objection at trial. *Id.*; *Garrity v. State of New Jersey*, 385 U.S. 493 (1967); *Salinas v. Texas,* ____ U.S. ____, 133 SCt. 2174, 2180 (2013)(plurality opinion)("[T]hreats to withdraw a governmental benefit such as public employment sometimes make exercise of the privilege so costly that it need not be affirmatively asserted.").

If the court finds that incriminating statements were obtained under threat of removal from office, the court need not determine whether a defendant waived his privilege; the coerced statements are inadmissible in a criminal matter. *United States v. Saechao*, 418 F.3d 1073, 1076 (9th Cir. 2005); *Aguilera v. Baca*, 510 F.3d 1161 n.9 (observing that, under such circumstances, the Fifth Amendment "is violated" where "a party actually makes an incriminating statement and the government then decides to use it in a criminal proceeding."); see also, *United States v. Goodpaster*, 65 F.Supp.3d 1016, 1026 (D. Or. 2014).

## ANALYSIS

It is clear that United States Border Patrol agents are subject to and trained on

Chapter Five, Article A(2)(c)-(d) of the CBP Use of Force Handbook.  It is equally clear that, by its own terms, compliance therewith is mandatory, and that an agent that fails to comply with the policy by not answering the 8 questions posed by a supervisor is exposed to penalty of discipline up to and including removal.

Mendez, Swartz's supervisor, asked Swartz the 8 questions at issue in this motion in furtherance of an investigation of a deadly force incident.  Mendez specifically and repeatedly led Swartz to believe any answers he gave to the 8 questions would not be used to incriminate him.  According to the United States Border Patrol's own, contemporaneous policy, any information provided by Swartz in response to those questions (where the government did not remove the threat of disciplinary action for failure to comply or, otherwise, employed any other means of coercion) could not be used against him in a criminal proceeding.

Based on the foregoing, and all of the evidence presented, the Court makes the following findings. First, that Swartz's statements in response to the 8 questions were obtained under threat of removal of office *and* compelled by Mendez's assurances that said statements would not be "incriminatory."  Second, that the 8 questions and their answers, which the government now seeks to introduce in this criminal matter, carried the risk of incrimination.  These were asked and answered, on-scene, by an investigating government agent, of a person known to have had just discharged his firearm.  The questions all concerned the circumstances surrounding said use of deadly force and called for Swartz to acknowledge and divulge his knowledge thereof and involvement therewith.  Contrary to the government's assertions, see Doc. 37 at 4, the shooting incident was not "routine" and, by extension, neither was the investigation it inspired. The threat of future criminal prosecution was both "reasonably particular and apparent." See *United States v. Bahr*, 730 F.3d 963, 966 (9th Cir. 2013).  Third, Swartz harbored a subjective belief that, if he did not answer the 8 questions posed by Mendez, he would face a disciplinary penalty.  Fourth, that such a belief is and was objectively reasonable. Border Patrol policies state that, if he did not comply a policy and/or an order from his

supervisor, Swartz would be exposed to discipline up to and including removal. There is no evidence that Mendez, or any other representative of the government, prior to the posing of the 8 questions to Swartz, effectively retracted the threat of employment related penalty. In fact, by affirmatively asserting that the 8 questions would not be asked of Swartz until such time as the union steward arrived, Mendez reinforced the potential that any answers Swartz might give (or his refusal to answer) would implicate the employment-related threat. The threatened penalty was, therefore, both "sufficiently coercive" and "more than merely hypothetical." See, *Id*.

By threatening to punish Swartz's silence (and not removing that threat) and by otherwise compelling his responses to the 8 questions, the government donned the hat of employer. Its own Use of Force Handbook policy, the Constitution, and this Court hold the government to that choice.

For the foregoing reasons, the Court finds that the statements made by the Defendant in response to the 8 questions posed by Mendez on October 12, 2012 were compelled, coerced and involuntary. Accordingly,

**IT IS ORDERED** Defendant's Motion to Suppress (**Doc. 33**) is **GRANTED**.

Dated this 23rd day of March, 2017.

Raner C. Collins
Chief United States District Judge