# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Lonnie Ray Swartz,<br><br>　　　　Defendant. | No. CR-15-01723-001-TUC-RCC (DTF)<br><br>**ORDER** |

Currently pending before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 29). The Court has reviewed the same, together with the Government's response opposition in thereto (Doc. 36), the Defendant's reply (Doc. 39), the Government's sur-reply (Doc. 54), the Defendant's supplemental brief (Doc. 60) and the Government's response to Defendant's supplemental brief (Doc. 79). An evidentiary hearing on this motion was held before this Court on October 17, 2016.

On September 23, 2016 a federal grand jury in Tucson, Arizona returned an indictment charging the Defendant with second degree murder in violation of 18 U.S.C. § 1111(a) & (b). Doc. 1, Ex. A. 18 U.S.C. § 1111(b) clarifies that the statute will apply "within the special maritime and territorial jurisdiction of the United States." The "Special maritime and territorial jurisdiction of the United States" includes:

> Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine,

arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3).

By and through his Fed.R.Crim.P. 12(b)(2) motion, Defendant Lonnie Ray Swartz has moved to dismiss the second degree murder charge brought against him, arguing "there is no indication that the alleged crime was committed on federal land." Doc. 29 at 2. The dispositive question, then, is whether, as a matter of law, 18 U.S.C. § 7(3) confers federal jurisdiction over the geographic area where offense is alleged to have occurred. If this Court determines that it does, the Court shall have subject matter jurisdiction over this case and the Defendant's motion must be denied.

## BACKGROUND

The Government represents that it expects to prove, at trial, "that defendant fired the shots which resulted in the death of the victim while the defendant was within lands referred to as the 'Roosevelt Reservation'… [which] was reserved or acquired for use of the United States first in 1897, and then in 1907, and is within the special maritime and territorial jurisdiction of the United States." Doc. 36 at 2.

The reservation to which the Government refers, see *id.*, is the 60-foot strip of land on the United States side of the international border between the United States and Mexico, running the length of California to New Mexico, that President Roosevelt, in 1907, "reserved from entry, settlement, or other form of appropriation under public land laws and set apart as a public reservation." *Id.* (citing Proclamation of May 27, 1907, 35 Stat. 2136-37 (1907-1909) at Doc. 79, Ex. B).

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction … they possess only that power authorized by Constitution and statute." *U.S. v. Marks*, 530 F.3d 799, 810 (9th Cir.2008)(internal citations omitted). The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction. *Id.* Accordingly, in the instant matter, the burden rests on the Government as the party that filed the Indictment in federal court. See, Doc. 1.

**DISCUSSION**

With respect to this "Roosevelt Reservation," it is apparent there is little the parties agree to.

The Government contends jurisdiction in federal court is appropriate because, Roosevelt's 1907 Proclamation "reserved the land at issue for use of the United States" and, as the Ninth Circuit has clarified, "there is no requirement that the United States be an owner, *or even occupant*, so long as the land has been set aside for the use of an instrumentality of the federal government." Doc. 36 at 4 (citing *United States v. Corey*, 232 F.3d 1166, 1176-1183 (9th Cir. 2000)(emphasis added). With respect to the effect of Arizona's entry into the Union, the Government points to Arizona case law in support of its contention that the federal government and the state of Arizona exercise concurrent jurisdiction over the land, see Doc. 54 at 2, citing *State of Arizona v. Galvan-Cardenas*, 165 Ariz. 399, 404 (Ct. App. Div. II 1990), and observes that Arizona has, since it achieved statehood, disclaimed all right and title to "unappropriated and ungranted lands within its boundaries," which would include those comprising the Roosevelt Reservation, see Doc. 54 at 2-4 (citing, e.g., Arizona's Enabling Act, A.R.S. Enab. Act, Sec. 20). Such concurrent jurisdiction, is, as the Ninth Circuit has explained, concurrent *legislative* jurisdiction, but, for purposes of interpreting the application of 18 U.S. C. §7(3) with respect to any geographic area, a court shall be satisfied that an area of land will qualify thereunder where "the United States enjoys such control over the area that the law should constructively regard it as a Untied States territory…[and] United States territorial jurisdiction [over the land] need not be exclusive." Doc. 4-5 (citing *Corey*, 232 F.3d at 1177-1178).

Though the Defendant does not dispute the existence of Roosevelt's 1907 Proclamation, he contends: (1) it did not create binding legal authority (Doc. 60 at 2-5); (2) even if it did, it did not confer Federal criminal jurisdiction over offenses committed thereon because, by its own terms, the reservation was created for a different purpose (Doc. 39 at 2-7); (3) regardless of its purpose, the government has not shown the "so-

called 'Roosevelt Reservation'" survived Arizona's admission to the Union in 1912 and is still respected as a federal land reservation (Doc. 39 at 2); (4) Congress affected the demise of the Roosevelt Proclamation when it passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and the Secure Fence Act of 2006, because both pieces of legislation "mandated the installation of numerous items at the border" that violated the Proclamations' express prohibition against the installation of such items (Doc. 60 at 6-8); and (5) the United States has otherwise abandoned the Proclamation as evidenced by the erection of structures on the land in direct contravention of the Proclamation's terms and at least two grants of land extended to private owners by way of land patents (Doc. 60 at 8-14).

This Court is not convinced by Defendant's arguments, and is satisfied the Government has bet its burden of establishing subject-matter jurisdiction with respect to the charged offense.

First, the Court rejects Defendant's supplemental argument that the Executive Orders and Proclamations, such as those creating the McKinley and Roosevelt Reservations, do not create binding legal authority. None of the case law Defendant cites belies well-established Supreme Court, Ninth Circuit, and statutory precedent acknowledging the President's power to promulgate Executive Orders reserving lands from sale and [other] public use. See, e.g. *Grisar v. McDowell*, 73 U.S. 363, 381 (1867); *United States v. Midwest Oil Co.,* et. al. 35 S.Ct. 309 (1915); *United States v. Alaska*, 423 F.2d 764 (9th Cir. 1970); The Pre-emption Act of 1830, 21 Cong. Ch. 208, May 29, 1830, 4 Stat. 420 at Section 4.

Second, it is not open to courts, on a question of jurisdiction, to inquire what actual use any portion of any federally reserved land is put. See *Benson v. United States*, 13 S.Ct. 60, 62 (1892). It is enough, for purposes of the instant examination, that the character and purpose of the land in question was legally and officially established, by virtue of the McKinley and Roosevelt Proclamations for the use and control by the federal government in connection with matters relating the "smuggling of goods" (which

implicates the enforcement of federal criminal and civil statutes) and, as the Government points out, matters relating to public safety. See Doc. 54 at 5. Furthermore, the Court is not convinced that the character and purpose of the land has, subsequently, been compromised either by patent of land or by any act of Congress. As to the former, the Government has shown that the patents of land the Defendant has cited do not extend into the Roosevelt Reservation and that, even if they did, said patents would be absolutely void as a matter of law. See Doc. 79 at 6-10; *Proctor v. Painter, et. al*., 15 F.2d 974, 975 (9th Cir. 1926). As to the latter, to hold that the cited acts of Congress somehow convey exclusive jurisdiction over crimes committed on the Roosevelt Reservation to the State of Arizona flies in the face of *Benson,* asks this Court to limit, or at least partially strip, the United States of its authority on and within the property it owns, uses and has control over, and requires this Court to turn a blind eye to what was consented to, disclaimed, ceded, and done in the past by both the State of Arizona and the federal government. This, the Court will not do.

Third, and based upon the evidence noted in this section, the Court is satisfied that the Government has shown that geographic area at issue maintained its status as federal reservation despite Arizona's entry into the Union in 1912. Moreover, the Supreme Court has recognized that lands may be reserved or acquired for the use of the United States *without* the consent of the state's legislature *if* the federal government reserved or acquired the land before statehood. See *Fort Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 526–527, 531–32 (1885)(emphasis added). Accordingly, even if Arizona had not, in its enabling act, disclaimed all right and title to the lands at issue in this motion, this Court would be still be satisfied that the Roosevelt Reservation maintained its character after Arizona was admitted as a state of the Union in 1912.

Finally, the Court observes that subsection 7(3) can only apply where the foreign sovereign does not object to the exercise of such jurisdiction, see *Corey*, 232 F.3d at 1171, and that the State of Arizona has not protested this Court's assertion of jurisdiction over this matter. In the United States, the Constitution permits the state and federal

governments to exercise concurrent jurisdiction without undue interference. *Id.* at 1180. "What matters is not whose law trumps in particular situations, but that there is a law-driven means for resolving any conflict." *Id.*

In sum, the Government has shown, to this Court's satisfaction, that the lands comprising the Roosevelt Reservation, fall within the purview of 18 U.S.C. §7(3) such that this Court has subject-matter jurisdiction over the criminal charges brought in this case. Accordingly,

**IT IS ORDERED** Defendant's motion to Dismiss (**Doc. 29**) is **DENIED**.

Dated this 24th day of March, 2017.

Raner C. Collins
Chief United States District Judge