**Sean C. Chapman**
**Law Office of Sean C. Chapman, P.C.**
100 North Stone Avenue, Suite 701
Tucson, Arizona 85701
Telephone: (520) 622-0747
Fax: (520) 628-7861
Arizona State Bar No. 012088
Attorney for Defendant
Sean@seanchapmanlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 15-1723 TUC RCC (DTF) |
| Plaintiff, | ) | |
| v. | ) | **MOTION FOR WITNESS DEPOSITION** |
| Lonnie Ray Swartz, | ) | |
| Defendant. | ) | |

It is expected that excludable delay under Title 18, United States Code, § 3161(h)(1)(F) will occur because of this motion or an order based thereon.

The Defendant, Lonny Swartz, through undersigned counsel, Sean C. Chapman of THE LAW OFFICE OF SEAN C. CHAPMAN, P.C., respectfully requests that this Court issue an order scheduling a material witness deposition for witness ▮ in this matter pursuant to Rule 15(a)(1) of the Federal Rules of Criminal Procedure.[1] This motion is supported by the accompanying Memorandum of Points and Authorities.[2]

---

[1] The witness' name and other identifying information are redacted from this pleading. An unredacted version of this motion is being filed under seal.

[2] Pursuant to L.R.Crim. 12.1(a) and L.R.Civ. 7.2(j), undersigned counsel certifies that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve this matter.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     Facts/Procedural History

The government alleges that defendant Lonny Swartz, a United States Border Patrol agent, committed the offense of Second Degree Murder when he shot and killed the decedent on October 10, 2012.  The shooting occurred along the international border in Nogales, Arizona as Swartz and other agents were attempting to apprehend two drug smugglers who had come into the United States with large bundles of marijuana, dropped them, and were attempting to climb back over the international border fence into Mexico.

The area of the shooting is known as the "West International" area, which is just west of the De Concini Port of Entry.  Other areas along the fence in Nogales are used by illegal entrants and alien smugglers, but this particular area is used exclusively by drug smugglers.  Given its exclusive use for drug smuggling, agents are trained that this is a dangerous area---smugglers are more aggressive, they tend to resist apprehension more strenuously, and tend to be more assaultive toward the agents.  This area also tends to be scouted more carefully by cartel members both on the U.S. and the Mexican side.

The decedent, and other unknown individuals, were throwing rocks at Swartz and other agents from Nogales, Sonora to impede the agents' efforts to apprehend the two drug smugglers who were atop of the international boundary fence attempting to escape

into Mexico. The actions of the two drug smugglers were part of a coordinated effort to bring drugs into the United States and involved not only them, but other individuals working for this conspiracy---including the decedent and other rock throwers on the Mexican side of the fence.

Although the decedent has sometimes been portrayed as an innocent bystander to this operation, he clearly was involved.  His involvement, the *modis operandi* of the drug operations in this area, and Agent Swartz's heightened concerns about safety and security in this specific area are part of the theory of the defense in this case, and will assist the jury in assessing the reasonableness of Agent Swartz's actions.[3]

During the investigation in this case, the defense has learned that, not only was the decedent throwing rocks at agents from Mexico, but shortly before then, was in the United States, being pursued by law enforcement agents.

On December 7, 2016, the government interviewed a witness identified as ▓ who resides at ▓ Arizona.  ▓ residence is roughly 50 meters north of the international border, and very close to the area where the shooting occurred.  ▓ indicated that ▓ knew the decedent and had seen him in the neighborhood as he was growing up.  ▓ indicated that he would pass by ▓ house and was in the neighborhood

---

[3] It is not clear whether the government agrees with the defense assessment of the decedent's involvement in this case, as a witness was disclosed who purports to suggest that the decedent was simply walking home at the time he was shot.

frequently. In an earlier interview, ▓ indicated that ▓ family had disassociated itself from the decedent after he became involved in drug smuggling at an early age.

▓ stated that on the night of the shooting, ▓ saw the decedent run by ▓ house southbound toward the border fence. ▓ stated that ▓ saw two Border Patrol Agents by ▓ house and had a premonition that something bad was going to happen to the decedent. ▓ assumed the agents were chasing the decedent, and heard them say in Spanish that they were going to find him. ▓ went to bed, and a short time later heard gunshots. ▓ later learned that the gunshots ▓ heard were related to the shooting of the decedent by Agent Swartz.

▓ testimony is highly relevant to the defense because it describes the decedent's actions on the night of the shooting and shortly before it. ▓ testimony establishes that the decedent was involved in a smuggling operation not only when he was attempting to rock agents, but a few minutes earlier on the American side of the border. Whether he personally transported drugs or acted as a scout is unclear---what is clear is that he was involved in this operation.

This evidence is probative not only in terms of justifying Agent Swartz's heightened concerns about this area, but also relevant in that it provides the jury with a complete picture of the events which occurred on that night.

The decedent was involved in a conspiracy to import drugs into the United States as reflected not only by his efforts to harm agents with rocks, but also by his presence in

the United States shortly before the shooting. ▓ observations of the decedent merely completes the story for the jury.

▓ was served with a trial subpoena by the defense on March 8, 2017. On April 20, 2017, the defense investigator had additional contact with ▓ At that time, ▓ indicated a great reluctance to testify in this matter, despite the fact that ▓ had been served with a subpoena. ▓ stated that ▓ would not permit ▓ to appear in court. ▓ stated that ▓ was "very strict" and "will not allow ▓ to show up." ▓ also indicated that ▓ has significant health problems and ▓ could not leave ▓ to testify. ▓ further indicated that ▓ had a valid medical reason not to appear to testify due to ▓ illness, even if ordered to do so.

**II. Law**

Rule 15(a)(1) of the Federal Rules of Criminal Procedure provides that:

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice….

The district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the "exceptional circumstances' requirement has been satisfied." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998) (quoting *United States v. Farfan–Carreon*, 935 F.2d 678, 679 (5th Cir.1991)). This Court should exercise its discretion to permit the deposition of ▓ because ▓ has strongly indicated that ▓ will not willingly

appear at trial even though ▇ has been subpoenaed for the trial. ▇ testimony, however, is critical to the defense theory of the case, and completes the story for the jury in that it assists in painting a complete picture of the decedent's actions on the night of the shooting. Thus, the purpose for ▇ testimony satisfies Rule 15, which "contemplates a party taking the deposition of only his own witnesses, and only if the witness may be unable to attend trial." *United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006) (*citing United States v. Rich*, 580 F.2d 929, 934 (9th Cir. 1978) and *United States v. Cutler*, 806 F.2d 933, 936 (9th Cir. 1986)).

In addition, Rule 15(a) does not require a showing that the witness is unavailable for trial or that the evidence is material or favorable (although we believe it is both). *Omene*, 143 F.3d at 1170. The witness's unavailability must be established before a party may use the deposition at trial, not before the party may depose a witness. *Id*. "Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." *Id*. The Federal Rules of Evidence generally condition the admissibility of deposition testimony, in the absence of trial testimony, on the unavailability of the witness. *See* Fed.R.Evid. 804(b). But, "[i]t would be unreasonable and undesirable to require the [ a party] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain

authorization to take his deposition." *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985).

### III. Conclusion

For all the foregoing reasons, Defendant respectfully requests that the Court issue a summons to the witness requiring ███ to appear at a deposition in this matter, in order to preserve ███ testimony.

Respectfully submitted this 9th day of May, 2017.

LAW OFFICES OF SEAN CHAPMAN, P.C.

BY:   /s/  Sean Chapman
Sean Chapman

1   Electronically mailed this 9<sup>9th</sup> day of May 2017 to:

2   United States District Court

3
    Wallace Kleindeinst
4   Mary Sue Feldmeier
    United States Attorneys Office
5   405 W. Congress Street
6   Suite 4800
    Tucson, AZ 85701-5040
7

8
    <u>Serena Lara</u>
9