**Sean C. Chapman**
**Law Office of Sean C. Chapman, P.C.**
100 North Stone Avenue, Suite 701
Tucson, Arizona 85701
Telephone: (520) 622-0747
Fax: (520) 628-7861
Arizona State Bar No. 012088
Attorney for Defendant
Sean@seanchapmanlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 15-1723 TUC RCC (DTF) |
| Plaintiff, | |
| v. | **MOTION TO DISMISS INDICTMENT** |
| Lonnie Ray Swartz, | |
| Defendant. | |

It is expected that excludable delay under Title 18, United States Code, § 3161(h)(1)(F) will occur because of this motion or an order based thereon.

The Defendant, Lonny Swartz, through undersigned counsel, Sean C. Chapman of THE LAW OFFICE OF SEAN C. CHAPMAN, P.C., respectfully requests that this Court dismiss the indictment for the reason that it was secured with statements compelled in violation of the Fifth Amendment and *Garrity v. New Jersey*, 385 U.S. 493 (1967), as described more fully below.

/ / /

/ / /

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Salient Facts

On January 17, 2013, Supervisory Border Patrol Agent Leo Cruz-Mendez testified before the grand jury investigating Lonnie Swartz's actions on October 12, 2012. Agent Cruz-Mendez testified that he was on duty the night of the shooting and arrived at the scene within five minutes of hearing over the radio that shots had been fired. Shortly after approaching Agent Swartz, Cruz-Mendez asked eight questions that Swartz was required to answer per Chapter Five, Article A(2)(c)-(d) of the U.S. Customs and Border Protection's 2011 Use of Force Policy, Guidelines and Procedures Handbook. Cruz-Mendez testified to each of the questions he asked, and he repeated the answers Swartz gave in response. (See Exhibit A attached hereto.) The grand jury subsequently issued a true bill, formally charging Agent Swartz with the offense of Second Degree Murder.  (Doc. 1.)

On March 24, 2017, this Court granted Swartz's Motion to Suppress, finding that the statements made by Agent Swartz in response to the 8 questions posed by Agent Cruz-Mendez were "compelled, coerced and involuntary." (Doc. 97, p. 6.); see, *Garrity v. New Jersey, supra*. The use of Swartz's compelled statements to obtain his indictment is prohibited by law and requires the dismissal of the indictment.

///

///

## II.  Law

"A grand jury is no more entitled to use a witness's immunized testimony against him to reach an indictment than is a trial jury permitted to use such testimony to reach its verdict." *In re Grand Jury Proceedings (Kinamon)*, 45 F.3d 343, 348 (9th Cir. 1995). This is because statements obtained from an employee who was required to answer questions under threat of dismissal are subject to use and derivative use immunity. *Id.*; see also, *United States v. North*, 920 F.2d 940, 947–49 (D.C.Cir. 1990) (en banc) ("grand jury may not consider immunized testimony or evidence derived from it"); *United States v. Schmidgall*, 25 F.3d 1533, 1536–37 (11th Cir. 1994) ("focus on the evidence actually used by the government in obtaining the indictment is a correct application of *Kastigar*"); *United States v. Pelletier*, 898 F.2d 297, 301 (2d Cir. 1990) ("A challenge to an indictment on the basis that it was improperly obtained through the use of immunized testimony is timely under rule 12(b)").

Dismissal of the indictment is the proper remedy for this type of violation. See, *In re Grand Jury Subpoena (Rockwell Int'l. Corp.)*, 119 F.3d 750, 755 (9th Cir. 1997) ("If and when the grand jury returns an indictment against one or more of the appellants, the indicted individual can move the district court to quash the indictment."); see also, *United States v. Daniels*, 281 F.3d 168, 181 (5th Cir. 2002) (Government satisfied its burden of proving that statements obtained in violation of *Garrity* "were not put before, or ever mentioned to, the second grand jury… ."); *North*, 920 F.2d at 947–49;

S*chmidgall*, 25 F.3d at 1538–39; *Pelletier*, 898 F.2d at 303; *United States v. Holloway*, 74 F.3d 249, 253 (11th Cir. 1996).

These principles are grounded in the Fifth Amendment, which provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The Supreme Court has stated that "[t]he essence of this basic constitutional principle is 'the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Estelle v. Smith*, 451 U.S. 454, 462 (1981) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581–82 (1961)). One aspect of the Fifth Amendment right against self-incrimination, applicable here, is that compelled statements may not be used in subsequent criminal proceedings. *Garrity v. New Jersey, supra.*

The Supreme Court's decision in *Garrity* expressly "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." 385 U.S. at 500. This prohibition has been broadly interpreted and applied. "Immunity under *Garrity* prevents any statements made in the course of the internal investigation from being used against the officers in subsequent criminal proceedings." *United States v. Vangates*, 287 F.3d 1315, 1320 (11th Cir. 2002). *Garrity* provides a "complete prohibition on the 'use in subsequent criminal proceedings of statements obtained under threat of removal from office ...'" *In re Grand Jury Subpoena Dated December 7 & 8*

*(Stover)*, 40 F.3d 1096, 1102 (10th Cir. 1994) (quoting *Garrity*, 385 U.S. at 500). This "total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Id.* (quoting *Kastigar v. United States*, 406 U.S. 441, 460 (1972)). Thus, use and derivative use immunity "leave the witness and Federal Government in substantially the same position" as if the witness had asserted his Fifth Amendment privilege not to testify. *Kastigar*, 406 U.S. at 458–59.

The Fifth Amendment privilege is available to witnesses before grand juries. *Lefkowitz v. Turley*, 414 U.S. 70, 78 (1973). While an officer's compelled statements may be discovered by a grand jury, it is their use that offends the Fifth Amendment. In *In re Grand Jury Subpoena (Huntington Beach Police Officers Ass'n.)*, 75 F.3d 446 (9th Cir. 1996), police officers moved to quash a grand jury subpoena issued by the Department of Justice in a civil rights investigation of the police department. The grand jury subpoena sought discovery of compelled statements made by the police officers during an internal affairs investigation. The police officers moved to quash the subpoena, arguing that production of their compelled statements violated the officers' Fifth Amendment rights. The Ninth Circuit, however, rejected the officers' argument and affirmed the order denying the officers' motion to quash. The Ninth Circuit held that for *previously* compelled statements, the focus of the Fifth Amendment privilege

becomes the use, not the obtaining, of those statements. In other words, a Fifth Amendment analysis requires the Court to ask whether compelled statements are actually being used in a criminal case, not whether such statements were properly obtained in the first instance. 75 F.3d at 448.

In *Grand Jury Subpoena Dated December 7 & 8 (Stover)*, which the Ninth Circuit referenced with approval, see *id.*, the Tenth Circuit also considered whether the act of disclosing a compelled statement to the grand jury constituted a per se violation of the declarant's Fifth Amendment privilege. 40 F.3d at 1100. The Government argued that it is the grand jury's use of a compelled statement, not the mere disclosure of the statement, that offends the Constitution. *Id.* The Court agreed, explaining that "if, and when, any officer is indicted, the officer will have the opportunity *to challenge the indictment and the government will have the burden of proving that the indictment was obtained without the use of the officer's compelled statement* or any evidence derived from that statement." *Id.* at 1101, 1103 (emphasis added).

In each of these two cases, there was no Fifth Amendment violation because at the point in the proceedings in which the appeals arose, it was not clear whether the compelled statements had been used in a constitutionally proscribed manner. *Id.* at 1103; *In re Grand Jury Subpoena*, 75 F.3d at 448. Here, the Fifth Amendment was violated because the Government actually used Agent Swartz's compelled statements to

obtain an indictment against him.[1] The indictment must therefore be dismissed. *In re Grand Jury Proceedings (Kinamon)*, at 348; *In re Grand Jury Subpoena (Rockwell Int'l. Corp.)*, 119 F.3d at 755.

### III.  Conclusion

For all the foregoing reasons, the indictment was obtained in violation of Agent Swartz's Fifth Amendment rights; thus, the law requires that it be dismissed.

Respectfully submitted this 31st day of June, 2017.

LAW OFFICES OF SEAN CHAPMAN, P.C.

BY:   /s/  Sean Chapman
      Sean Chapman

Electronically mailed this 1st day of June 2017 to:

United States District Court

Wallace Kleindeinst
Mary Sue Feldmeier
United States Attorney's Office

Serena Lara

---

[1]  Because we know this, it is not necessary to hold a *Kastigar* hearing where the Government must prove that the evidence it proposes to use against Swartz was derived from a legitimate source wholly independent of the compelled testimony. *Kastigar v. United States*, 406 U.S. at 460. That question has already been answered. If, however, the Court declines to dismiss the indictment or the Government obtains a subsequent indictment following dismissal, it will be necessary to hold a *Kastigar* hearing.