ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
WALLACE H. KLEINDIENST
MARY SUE FELDMEIER
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
wallace.kleindienst@usdoj.gov
mary.sue.feldmeier@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>      vs.<br><br>Lonnie Ray Swartz,<br><br>             Defendant. | CR 15-01723-TUC-RCC (DTF)<br><br>GOVERNMENT'S MOTION IN LIMINE RE DRUG EXPERT AND IMAGES CONCERNING UNRELATED ROCKING AND DRUG TRAFFICKING ACTIVITY |

The United States of America, by and through its undersigned attorneys, moves *in limine* to limit drug expert testimony and preclude photographs and videos of unrelated rocking and drug trafficking activities as follows:

I.  Facts and Background

The defendant has given notice that he intends to call retired United States Border Patrol (USBP) Agent Peter Hermansen to testify "with respect to drug cartel activities" as follows:

1.  Nogales is controlled by the Sinaloa and elements of the Beltran Leyva cartels.

2.  The area where this incident occurred is controlled by a "Plaza Boss."

3.  Individuals running drugs through this area are supposed to pay the Plaza Boss. If someone attempts to do so without permission, conflict can occur which can result in beatings or homicide.

4.  The operation to get drugs over the fence here can be very sophisticated, and can/does get more complex as Border Patrol improves enforcement and security along the border.

5. Common practice in a smuggling operation can include:

- spotters with radios or phones-on the American and Mexican side to monitor the presence of BP in the area.
- runners- individuals that carry drugs over the fence to a stash house, load car, or to conceal for later pickup.
- decoys- individuals who will get the agents chasing a small amount of drugs while a larger load is brought in somewhere else.
- individuals to assist the runners to escape back to Mexico by creating a distraction or rocking the agents to stop them from apprehending the runners.

Defense letter dated February 8, 2017.

The defendant has also provided notice that he may introduce the following photographs and videos:

1. Two (2) photographs the defendant took of iron welded ladders which he purports to be "ladders that were used by cartel operators to assist drug smugglers in escaping over the fence back to Mexico." (Defense letter dated February 9, 2017.) The background in one photograph depicts a remote area with an iron post/gate structure in the background, not the urban setting of the crime scene at issue.

2. A daylight video titled "Drug Packer video.mp4." It is unknown who filmed this video, or when it was filmed. The defense states that the video shows an area on West International Street, 80-100 yards west of the camera pole. The video depicts four individuals running toward the international boundary fence as law enforcement vehicles converge on them. Two of the smugglers drop large bundles in the road before climbing the fence. At least one pack stays on a smuggler's back and he successfully gets it back to the other side of the fence. The law enforcement officers stay near the discarded packs and up against the fence until all the smugglers are back down on the other side. Then a law enforcement officer in a white shirt approaches the fence and appears to be pointing a weapon through it while the other officers pull him back.

3. Two USBP public relations videos, titled "Assault on Agents.mp4" and "Border Violence2.mp4." The first video features a voice-over throughout explaining the mission of the USBP and how dangerous the job is, and depicts arrests, patrolling the port,

rocks being thrown at agents, rocks hitting USBP vehicles, and pictures of injured agents (purportedly from rockings).  The second video is a montage of USBP camera videos of people throwing rocks over a border fence in which the rockers have the high ground, date-stamped January 11, 2002, December 21, 2001, March 19, 2002; it then fades into pictures of rock-damaged USBP vehicles, blood and wounded agents; followed by a February 18, 2004 night-time video of rock throwers in San Luis with text "Rock throwers endanger the lives of Patrol Agents on a daily basis in San Luis;" and ending with an undated video purporting to show a load vehicle containing 19 aliens, ramming a Cocopah Tribal Police (Yuma) vehicle.

   4. A video titled "Sinaloa Cartel Traffickers Climb Border Fence.mp4" depicts two drug smugglers at an unknown point in the international border fence, scaling the fence with packs on their backs and then sliding down into the United States side.  The video appears to be filmed from the Mexican side of the fence, and graffiti can be seen on the concrete stating "¡Chinga la Migra!"

II. <u>Law and Argument</u>

  A. <u>Drug Expert Testimony</u>

Expert testimony regarding drug organizations must be relevant in order to be admissible.  *United States v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001).  This is a murder case; not a complex drug trafficking case.  The jury will need evidence that can help them determine what threat the defendant perceived that night specifically, and whether his use of deadly force was reasonable in defense of others.

The government agrees that an overview of how drug smugglers typically climb the International Border Fence (IBF), deposit drugs for pickup by others, and then return to Mexico in the area where the offense occurred is relevant.  It would be beneficial for the jury to understand what they are viewing on the videos of the incident, in which two separate groups of smugglers can be scaling the IBF approximately 7 minutes apart, and individuals in Mexico make throwing motions at the IBF when two smugglers get stuck on top of the fence.  These are points covered in the defense's notice at #5.

However, #1-4, regarding the specific cartel that controls the "plaza," how the area in question is "controlled by a plaza boss," drug smugglers have to pay the plaza boss or risk serious bodily harm, and the increasingly complex way cartels have of smuggling drugs over the border, should be excluded. Drug cartel expert testimony is not relevant to the issue of whether the defendant, when confronted by rock throwers, acted lawfully in shooting and killing J.A.E.R. Nor are the increasing complex ways of smuggling drugs in response to border enforcement relevant in this case, where the evidence will show that smugglers simply climbed the fence with drugs on their back, deposited the drugs in the brush in the United States for pickup by another courier, and then scurried back up the fence and escaped into Mexico. The smugglers in this case did not use ladders, catapults, ramps or other means to import drugs, and evidence relating to those unrelated experiences by agents should be excluded, as they are unrelated to the issues being litigated and may confuse the jury.

Accordingly, the government requests that the defense's expert be limited to the areas discussed in point #5 of the defense's notice, as it pertains to the area where the shooting occurred. Additionally, other law enforcement agents who testify should be limited to testifying about what they saw and heard that evening (fact witnesses), and interpretation of what they witnessed based on their training and experience. They should not be permitted to recount "war stories" of unrelated drug smuggling attempts or rockings. This type of testimony does not help the jury understand what the defendant perceived during the offense and will confuse the jury.

B.  Videos and Photographs of Unrelated Drug Smuggling and Rocking Activity

The videos and photographs outlined in the facts section of this memorandum should also be excluded. The jury will have video of the actual shooting and the events leading up to the shooting to review. This video shows drug smugglers and individuals in Mexico who appear to be making throwing motions in the direction of the IBF. Those videos can be used to explain the defense that the defendant was responding to rock throwers when he shot J.A.E.R.

The photographs proffered by the defendant are irrelevant because they depict ladders that an unrelated group of smugglers apparently used in an unrelated smuggling event nowhere near where the shooting occurred. This case does not involve drug smugglers' use of ladders to import drugs, and the evidence of ladders should be excluded as misleading, confusing and irrelevant.

The videos, with the exception of "Drug Packer video.mp4" where not filmed anywhere near the where the event in question took place. Many of the videos are dated approximately 15 years ago, some took place in San Luis, some show rockers with the high ground on the agents, pummeling them from above, some show the port of entry, and one even shows an alien smuggling load. There are pictures of bloodied agents and a man with a mangled eye, and photos of USBP vehicles with rocks crashing through the windows. The videos have no bearing on what happened at the time of the offense or what the defendant perceived at the time of the offense.

In this case, no rocks crashed through any vehicle windows or hit agents causing bloody faces and mangled eyes. No agents were injured in the slightest. Furthermore, the hail of rocks from a "high-ground" position, with rockers throwing rocks down on agents did not occur during this offense. Rather, the victim here was approximately 25 feet below the agent, with a nearly 25 foot fence between them, for a total nearly 50' upward trajectory of any rock that was coming toward the agents. Admission of those videos would serve to inflame the emotions of the jury and confuse them into possibly believing that the area where the shooting occurred is a war zone, with agents under constant threat of great bodily harm. When instead, the focus should be on the specific strip of West International Street where the shooting occurred, and the fact that there are videos of the actual event that show the actual smugglers and throwers in this very case.

Accordingly, unrelated videos and pictures of drug smuggling methods, rockings, and injuries to agents should be excluded as irrelevant, prejudicial and confusing.

Wherefore, the United States of America respectfully requests that this Court limit the drug expert testimony of Mr. Hermansen, exclude the videos and photographs listed in

1 | this motion, and limit the drug smuggling experience testimony of the USBP agent
2 | witnesses as requested.

3 |       Respectfully submitted this 12th day of June, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*s/Mary Sue Feldmeier*

MARY SUE FELDMEIER
Assistant U.S. Attorney

Copy of the foregoing served electronically or by
other means this 12th day of June, 2017, to:

Sean C. Chapman, Esq.
Jim Calle, Esq.