ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
WALLACE H. KLEINDIENST
MARY SUE FELDMEIER
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
wallace.kleindienst@usdoj.gov
mary.sue.feldmeier@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  vs.<br><br>Lonnie Ray Swartz,<br><br>    Defendant. | CR 15-01723-TUC-RCC (DTF)<br><br><br>GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE OTHER AGENTS' TESTIMONY CONCERNING DRUG SMUGGLING AND ROCKINGS |

COMES NOW the United States of America, by and through its undersigned counsel, and hereby respectfully moves this Honorable Court to preclude the defense from eliciting statements and opinions about their experiences and knowledge concerning drug smuggling on West International Street, the dangers posed by drug smugglers, rockings, injury to agents caused by rockings, and similar testimony.

The defense has recently provided the government with reports of interviews they conducted of several Border Patrol Agents, who were either at the scene during the incident leading to the death of J.A.E.R., arrived at the scene after the shooting ended, or were not involved in the incident at all.  The interviews have a common thread of the Agents' personal experiences, knowledge, and opinions concerning drug smuggling, drug smugglers, and rockings, which they have gained as Agents.  The opinions are fairly summarized as follows:

- • West International Street (the location of the shooting), is dominated by drug smugglers. It is known as a "doper spot," scouts for the smugglers operating on both sides of the Fence, and help coordinating drug loads.

- • People who live on West International Street at the location of the shooting keep dogs on tethers at their homes "to discourage drug runners from crossing [their property]" and drugs have been recovered from the roof of one of these residences.

- • "Rocking" is common on West International Street as a distraction tactic.

- • Border Patrol uses armed vehicles on West International Street due to regular rockings.

- • Rocks can be deadly weapons, can cause death, and agents have been shown graphic photographs, including one of an agent struck on the top of his head by a rock thrown over Fence which "fucked up" his head, and caused blood to run down his face.

- • "Rockers" in Mexico will stand on rooftops of buildings near the International Border Fence to make sure the rocks make it over the Fence.

- • All of the agents described how they have had rocks thrown at them, described specific rocking events, and have seen rocks thrown at other Agents when trying to apprehend drug smugglers.

- • One agent described seeing a rock effectively thrown from houses 50 yards away.

- • Golf-ball sized rocks can do serious damage to an agent's eye, temple, mouth, or anywhere on the head.

- • Smugglers in Mexico throw rocks, ball bearings, Molotov cocktails, bottles of lit flammable chemicals, through or over the Fence at agents as a distraction to deter them from making apprehensions.

- • Drug smugglers are violent, they are more aggressive to avoid arrest than undocumented aliens, because they don't want to lose their loads or go to prison for a long time, they always fight, and when confronting smugglers, you pull out your pistol.

- • Smugglers use juveniles, some as young as 12 or 13, to be scouts, because if apprehended, they will not be prosecuted by the United States.

- • Several agents expressed their opinions when they can justifiably use lethal force during a rocking.

- • Several agents expressed their opinions that they are not required to "take cover" when being rocked, or back away from the Fence during rockings, because that would undermine their mission to apprehend drug smugglers and cede U.S. Territory to drug smugglers.

In addition, one of the agents involved in the incident stated that in his opinion, the defendant "was definitely not happy to have shot the bad guy."

These statements, opinions, and anecdotal accounts from agents who are not charged in this case do not constitute relevant evidence under Fed. R. Evid. 401. They should be excluded from the trial. It is not relevant as to what these witnesses may have previously experienced, or what these witnesses may have heard had happened in the past to other agents, at different locations, under different circumstances.

What is relevant at trial is what happened the night of the shooting, *i.e.* what the agents saw, heard and/or did that night. Moreover, the relevant issue is what the defendant <u>knew</u> at the time he fired his pistol and killed J.A.E.R. It is the defendant's state of mind that night, and not that of other agents, which the jury must assess in considering the charge against him. If the defendant intends to present a defense of others at trial to justify killing J.A.E.R., the Ninth Circuit Model Criminal Jury Instruction as to that defense makes it clear that it is only the defendant's state of mind which is relevant:

> The defendant has offered evidence of having acted in self-defense. Use of force is justified when a *person reasonably believes* that it is *necessary* for the defense of oneself or another against the immediate use of unlawful force. However, a *person* must use no more force than appears *reasonably necessary* under the circumstances.
>
> Force likely to cause death or great bodily harm is justified in self-defense only if a *person reasonably* believes that such force is necessary to prevent death or great bodily harm.

Ninth Circuit Model Criminal Jury Instruction, No. 6.8 (Self-Defense) (emphasis added). Thus, it is what the defendant reasonably believed was reasonably necessary to use lethal force under the circumstances to defend other individuals at the moment he fired his pistol. What any other agent or witness knew or believed is completely irrelevant.

Even if the Court deems any of this potential testimony to be relevant, it is precluded by Fed. R. Evid. 403, because any probative value (which we submit is non-existent), is substantially outweighed by the unfair prejudice to the government, the confusion of the issues in the case, and misleading as to the relevant issues in the case, should the jury hear it. This potential testimony misleadingly paints West International as a "deadly war zone"

that night, interjects attributes of drug smuggling and drug smugglers, such as their resort to violence beyond rocking, which were not present that night, and presents rockings as a threat greater than what existed that night.  It would undoubtedly, and unfairly, present facts to the jury which are not relevant, and which would distract it from what is in fact relevant.  This testimony would push the red-hot controversial and complex button of drug smuggling along the Border with Mexico.  It would make the trial a referendum and sideshow on that issue diverting the jurors from an objective examination of the relevant issue in the case:  Did the defendant act with malice aforethought and without justification when he shot J.A.E.R. to death?

WHEREFORE, for the above and foregoing reasons, the United States of America respectfully requests that this Honorable Court grant the government's motion in limine precluding agents from testifying concerning unrelated drug smuggling, rocking incidents, and other matters in accordance with the government's position set forth herein.

Respectfully submitted on this 8th day of February, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/ Wallace H. Kleindienst*

Wallace H. Kleindienst
Assistant U.S. Attorney

Copy of the foregoing served electronically or by
other means this 8th day of February, 2018, to:

Sean C. Chapman, Esq.
Jim Calle, Esq.