UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | No.  **CR-15-1723-TUC-RCC-DTF** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Tucson, Arizona |
| | ) | March 21, 2018 |
| **Lonnie Ray Swartz,** | ) | 10:44 a.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE:   THE HONORABLE RANER C. COLLINS, JUDGE**

**REPORTER'S EXCERPTED TRANSCRIPT OF PROCEEDINGS**

**JURY TRIAL
DAY 2**

(GOVERNMENT'S OPENING STATEMENT)

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Government:
    U.S. Attorney's Office Tucson
    By:  **Wallace Heath Kleindienst**, Esq.
        **Mary Sue Feldmeier**, Esq.
    405 West Congress Street, Suite 4800
    Tucson, Arizona 85701

For the Defendant:
    Law Offices of Sean C. Chapman
    By:  **Sean Christopher Chapman**, Esq.
    100 North Stone Avenue, Suite 701
    Tucson, Arizona 85701

    Law Office of Jim E. Calle
    By:  **Jamie Ernest Calle, III**, Esq.
    2315 East Hawthorne Street
    Tucson, Arizona 85719

1     (The following excerpt is the Government's opening
2  statement.)
3           MS. FELDMEIER:  Good morning, ladies and gentlemen.
4           My name is Mary Sue Feldmeier.  I'm an Assistant
5  United States Attorney for the District of Arizona, Department
6  of Justice.  With me at counsel table is Wallace Kleindienst.
7  He is another Assistant United States Attorney assigned to
8  prosecute this case.
9           I'm going to move this microphone because I think it's
10 picking me up.
11          You will also notice another woman at counsel table
12 with us.  Her name is Sarah Arrasmith.  Sarah is a Special
13 Agent with the Department of Homeland Security, Office of
14 Inspector General.  She's the lead investigator in this case,
15 and she will help us sort through our evidence, find our tails
16 when we lose them.  So please bear with us.
17          As the Court has mentioned, this is a very serious
18 matter.  On October 10th of 2017 at approximately 11:30 p.m.,
19 over a span of 34 seconds, the defendant, U.S. Border Patrol
20 Agent Lonnie Swartz, fired 16 shots across the international
21 border, killing an unarmed Mexican teenager.
22          The defendant struck the victim.  The victim is
23 16-year-old Jose Antonio Elena Rodriguez.  He shot him eight
24 times in the back and twice in the head.  Thirty-four seconds,
25 16 shots, ten bullets to the back and head.

10:44:10
10:44:24
10:44:42
10:45:08
10:45:40

| | | |
|---|---|---|
| 1 | What did Jose do to merit being shot to death?  He | |
| 2 | threw rocks, ladies and gentlemen.  He was supporting some drug | |
| 3 | smugglers who had already left their marijuana in the United | |
| 4 | States, their two speed packs of marijuana that were strapped | |
| 5 | to their back with tape.  They had dumped their marijuana in | 10:46:06 |
| 6 | the United States, were scaling the 22-foot international | |
| 7 | border fence and were clinging to the top of it. | |
| 8 | And Jose and two of his companions, we don't know what | |
| 9 | their relationship was, in the video appear to be throwing | |
| 10 | motions.  Five throwing motions are counted between the three | 10:46:27 |
| 11 | individuals. | |
| 12 | Agents will say that rocks started coming over the | |
| 13 | fence or rocks started hitting the fence. | |
| 14 | Ladies and gentlemen, supporting drug traffickers, | |
| 15 | throwing rocks, that's not a death penalty offense.  But on | 10:46:43 |
| 16 | that day, Lonnie Swartz became the judge, the jury and the | |
| 17 | executioner. | |
| 18 | What I'd like to do now is introduce to you these two | |
| 19 | boards. | |
| 20 | What we have here -- | 10:47:08 |
| 21 | Just talk really close?  Got it. | |
| 22 | What we have here is what the view is.  This is going | |
| 23 | to be Government's Exhibit No. 312.  This is the view that the | |
| 24 | rockers would have seen when throwing up over the fence, but at | |
| 25 | nighttime.  This is Mexico on the other side of the fence.  And | 10:47:30 |

1  the rockers were standing down here at the bottom on the road
2  in Nogales, Sonora Mexico.
3        You will hear evidence that this berm is 14-feet tall.
4  And atop it sits the international border fence, which is
5  another 22 feet.  So the rockers were throwing pieces of rubble
6  36 feet into the air to land on the other side.
7        Now let me tell you a little bit about this board.
8  This is 179A.  This is what the defendant Lonnie Swartz saw
9  that night.
10       You can see there's a Border Patrol Agent standing
11 right here on the edge.  You'll hear testimony he's about five
12 foot six inches tall.  So Mr. Swartz is just a little -- is
13 taller than that, maybe more in the six two range.
14       But as you can see, this wall is a three-foot concrete
15 barrier that hits an agent mid thigh.  It is then topped by
16 steel beams, we call them bollards.  They are set four inches
17 apart.  These steel beams and the concrete together are 22-feet
18 tall.
19       Now what I expect the evidence is going to show -- and
20 I'm going to shout a little because I want to make sure it's
21 heard because I can't use my microphone.
22       But what I'm going to show is that Mr. Swartz, when
23 the rocks started coming over, was in a position of cover.  He
24 then calmly and slowly walked for about eight seconds, nine
25 seconds, across the street while the rocks are falling and

10:47:48
10:48:07
10:48:24
10:48:49
10:49:05

1  supposedly putting him in danger.  He reaches the fence and he
2  puts his gun through the first bollard.  Not satisfied with
3  what he sees, within a second he moves it to a second bollard.
4  He then squeezes the trigger three times.  And we know because
5  there's three shell casings in that area.
6          Then the video pans to the Mexican side and the
7  decedent is found laying on the ground.
8          But Mr. Swartz is not finished shooting.  Then for the
9  next eight seconds, with his gun at the ready, he goes down the
10 fence line 45 feet.  Ladies and gentlemen, that is the width of
11 this courtroom, 45 feet.  The entire time the victim is on the
12 ground laying face down.
13         He reaches the next point, puts his gun through the
14 bollards, and over the next ten seconds squeezes off ten more
15 shots.  1001, 1002, 1003, 1004, 1005, 1006, 1007, 1008, 1009,
16 1010.
17         He's not done yet.  He backs up, drops his clip,
18 reloads, comes back to the fence.  Puts his -- eight seconds to
19 reload, puts his gun back through the bollards.  1001, 1002,
20 1003.  Finally backs off the fence.
21         This is not an immigration case.  This is not a drug
22 case.  This is a second degree murder case.  You are being
23 asked to determine whether the facts show that the defendant
24 unlawfully killed Jose, that it occurred on a federal
25 jurisdiction within the Roosevelt Reservation, and that the

*Government's Opening Statement*

|  |  |  |
|---|---|---|
| 1 | defendant killed Jose with malice aforethought. | |
| 2 |      Malice aforethought is to kill deliberately and | |
| 3 | intentionally or recklessly with extreme disregard for human | |
| 4 | life. | |
| 5 |      There's no dispute that the defendant fired the shots | 10:51:20 |
| 6 | that killed Jose.  There's no dispute the defendant fired 16 | |
| 7 | times, and that ten of the bullets hit Jose in the back and | |
| 8 | head killing him.  There's no dispute that the killing occurred | |
| 9 | on a strip of federally-owned land called the Roosevelt | |
| 10 | Reservation.  There's also no dispute that the defendant, | 10:51:38 |
| 11 | either deliberately or intentionally, killed Jose with that | |
| 12 | number of shots, or at a bare minimum acted recklessly with | |
| 13 | disregard for Jose's life. | |
| 14 |      What is in dispute here, and only issue really that | |
| 15 | this is going to boil down to, is whether or not the killing | 10:51:53 |
| 16 | was unlawful.  This is the issue in this case.  This is the | |
| 17 | only issue in this case. | |
| 18 |      As to whether a killing is justified, under the law a | |
| 19 | killing is only justified if it is done in self-defense or | |
| 20 | defense of others. | 10:52:13 |
| 21 |      Know that a law enforcement officer such as the | |
| 22 | defendant is not above the law.  He has taken an oath to uphold | |
| 23 | the law.  He cannot use his badge as a shield against a murder | |
| 24 | charge.  He is held to the same standard that I am, that you | |
| 25 | are, that every citizen of this country is held to. | 10:52:31 |

There is no special law enforcement self-defense.

The jury instruction you will receive on self-defense says that use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances. 10:52:52

Now this is the important part, because this next part talks about if you are going to use force that could cause death or great bodily harm, which is what we have here. The 10:53:10 defendant used a pistol, which is a weapon that can cause death or great bodily harm. And in that case it is only justified in self-defense or defense of others if a person reasonably believes that such force is necessary to prevent death or great bodily harm. 10:53:32

In other words, ladies and gentlemen, a last resort before we take a human life.

The facts of this case show that the shooting was unjustified from the moment the defendant left cover and calmly and deliberately walked to the fence. His colleagues were all 10:53:46 undercover. No one else was in danger. He wasn't obviously in danger because he calmly and deliberately walked through the rocks that were supposedly coming down.

All the other agents on scene took cover. They didn't draw their weapons. The ones on the street near him, they did 10:54:08

**Government's Opening Statement**

1  not draw their weapons when the rocks started coming.  They
2  took cover.  And they kept an eye on the target, which was the
3  two gentlemen who were still on the top of the fence trying to
4  escape into Mexico.
5         When the evidence is finished, Mr. Kleindienst and I      10:54:22
6  will come back, and we're going to ask you to return a verdict
7  of guilty on second degree murder.
8         Thank you for your attention.
9    (Further proceedings held on the record not included in
10 this transcript.)

12                              -oOo-

C E R T I F I C A T E

I, CANDY L. POTTER, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 4th day of April, 2018.

s/Candy L. Potter
Candy L. Potter, RMR, CRR